# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| MERRILL COHEN, AS TRUSTEE IN BANKRUPTCY FOR ENVIRONMENTAL PRESERVATION ASSOCIATES, INC. d/b/a USA LIGHTS and K&S MUIRKIRK ASSOCIATES, | * * * * |
| Joint Appellants, | * |
| v. | **United States District Court** **Case No.: PWG-12-2863** |
| ENDURANCE AMERICAN SPECIALITY INSURANCE COMPANY, | * * |
| Appellee. | * |
| ------------------------------------------------- | |
| ENDURANCE AMERICAN SPECIALITY INSURANCE COMPANY, | * * |
| Plaintiff, | * |
| v. | * |
|  | **Adversary Proc. No. 10-751** |
| MERRILL COHEN, AS TRUSTEE IN BANKRUPTCY FOR ENVIRONMENTAL PRESERVATION ASSOCIATES, INC. d/b/a USA LIGHTS and K&S MUIRKIRK ASSOCIATES, | * * * * |
| Defendants. | * |
| ------------------------------------------------- | |
| In re: ENVIRONMENTAL PRESERVATION ASSOCIATES, INC., | * * **Case No. 10-14421-TJC** **Chapter 7** |
| Debtor. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Merrill Cohen, in his capacity as Chapter 7 Trustee for Debtor Environmental Preservation Associates, Inc. d/b/a USA Lights ("EPAI"), and K&S Muirkirk Associates ("K&S"), Appellants, have filed an appeal from the United States Bankruptcy Court for the District of Maryland's August 14, 2012 Memorandum of Decision ("Bankr. Ct. Dec.") and Order, ECF Nos. 1-1 & 1-2. In that Decision, the bankruptcy court granted summary judgment in favor of Endurance American Specialty Insurance Co. ("Endurance"), Appellee, and denied Appellants' cross-motion for summary judgment.[1] Appellants also have filed an Objection, ECF No. 24, to the Bankruptcy Court's April 25, 2013 Memorandum and Order Resolving Remand, ECF No. 23. Appellee filed an Opposition to Appellants' Objection, ECF No. 25, and the parties requested oral argument, ECF Nos. 26 & 27.[2] Appellants did not file a reply, and the time for doing so has passed. *See* Loc. R. 105.2.a. Having reviewed the parties' briefs (ECF Nos. 4, 15

---

[1] Appellants do not challenge the bankruptcy court's denial of their summary judgment motion. *See* Appellants' Br.

[2] One ground of Appellee's Opposition is that Appellants' Objection is an "improper . . . challenge [of] the District Court's own remand order . . . that allowed for further evidentiary findings." Appellee's Opp'n ¶ 1. Appellee argues that Appellants did not have the bankruptcy court's leave to object to the Memorandum and Order Resolving Remand. *Id.* ¶ 5. It is true that, following this Court's order remanding the case, this case was closed administratively for convenience during the pendency of the bankruptcy court's additional factual findings. However, this closing was not ordered by the Court. *See* Mem. & Order 5–6. It was ministerial, and it did not divest this Court of jurisdiction. Rather, this Court remanded the case because "judicial efficiency and a need for the record to contain all documents to create a full understanding of the case [for this Court to hear the appeal] necessitate[d] that this information be included in the ultimate record before this court," and this Court concluded that a "remand to the [bankruptcy] court would satisfy this issue." *Id.* at 5. It is hereby ORDERED that this case be REOPENED to rule on the appeal that is still pending. As the appeal continues before this Court and Appellants' Objection relates to the original notice of appeal, ECF No. 1, and the argument presented in Appellants' Brief, this Court has jurisdiction to hear not only the appeal but also Appellants' Objection. *See* 28 U.S.C. § 158(a)(1) (district court has jurisdiction to hear appeals from bankruptcy court's final orders); Fed. R. Bankr. P. 8001(a) (party to bankruptcy proceeding may appeal bankruptcy court's final order to district court by filing notice of appeal); Fed. R. Civ. P. 1.

& 20), Appellant's Objection, Appellee's Opposition, and the record, I find oral argument unnecessary. *See* Fed. R. Bankr. P. 8012; Loc. R. 105.6. For the reasons that follow, Appellants' Objection to the bankruptcy court's order resolving remand will be OVERRULED, and the bankruptcy court's order granting summary judgment will be AFFIRMED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

EPAI, a corporation that removed hazardous chemicals from light fixtures and resold the glass and the chemicals, applied to Endurance for an environmental insurance policy (the "Policy") on June 10, 2009, without disclosing that the Maryland Department of the Environment ("MDE") uncovered violations of Maryland environmental laws when it inspected EPAI's operations less than one month earlier. Bankr. Ct. Dec. 3 & 5–6. Endurance issued the Policy to EPAI for the period of July 5, 2009 to July 5, 2010, and EPAI paid a premium of $6,575. Bankr. Ct. Dec. 3; Policy, ECF No. 1-24. The Policy provides that "[t]he *Company* may cancel this *Policy* for . . . fraud or material misrepresentation by an *Insured*," and that, "[i]f the *Insured* willfully concealed or misrepresented any fact or circumstance material to the granting of coverage under this *Policy*, this entire *Policy* shall be void." Policy 27. Additionally, the Policy provides that "[i]n the event of cancellation by the *Company*, the earned premium shall be computed pro rata," and "[t]he *Company* will tender any return premium subject to retaining a minimum earned premium equal to 25% of the amount specified in the Declarations unless modified by endorsement. . . . [N]either tender of the unearned premium nor return of this *Policy* shall be a condition to cancellation hereunder." *Id.* at 25. Notably, the Policy does not address the return of the premium if the Policy is void or what expenses the insurer may deduct from the premium before returning what, if anything, remains.

3

The MDE filed a complaint against EPAI on September 22, 2009, alleging that EPAI's handling of hazardous substances violated Maryland law. Compl. ¶ 5, ECF No. 1-13 at 29–47. On January 29, 2010, EPAI notified Endurance of the complaint. Jan. 29, 2010 Ltr. 1, ECF No. 1-11. The attachments to the notification letter referenced the May 2009 MDE inspections, although the letter itself "did not mention that [the inspections] had occurred before the inception date of the policy." Dec. 17, 2010 Aff. of Stephen Wunderlich ¶ 18, ECF No. 1-22; Jan. 29, 2010 Ltr. A settlement conference and an administrative hearing were scheduled, and Endurance assigned counsel to represent EPAI. Wunderlich Aff. ¶¶ 16–17 & 22; Notice of Hr'g, ECF No. 1-12 at 32; Notice of Settlement Conf., ECF No. 1-12 at 33. The MDE and EPAI reached a settlement agreement, under which the MDE would dismiss the complaint against EPAI, and Endurance would fund a site study to test soil and groundwater on EPAI's premises. Wunderlich Aff. ¶¶ 23–24 & Ex. E, Settlement Agr., ECF No. 1-27. Bishop and Associates conducted the study and issued a report on June 14, 2010 ("Bishop Report"). *Id*. ¶¶ 27 & 34 & Ex. I, Bishop Report, ECF No. 1-31. Meanwhile, on March 3, 2010, EPAI filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Maryland under Chapter 7 of Title 11 of the United States Code. Adv. Compl. ¶ 8, ECF No. 1-4.

By letter dated July 27, 2010, Endurance declared the Policy "to be void *ab initio*" due to the misrepresentations in the application and stated that it would be sending a check for the remaining net premium to the Trustee after Endurance completed an accounting. July 27, 2010 Ltr. 6, ECF No. 1-16. On October 4, 2010, Endurance brought a declaratory judgment adversary action in the bankruptcy proceeding, seeking a declaration that "the Policy is void *ab initio* and Endurance has no obligation to provide coverage or otherwise defend or indemnify the Defendant for any claims submitted for coverage under the policy." Adv. Compl. ¶ 44.

4

Endurance claimed that the Policy was void *ab initio* and Endurance was "entitled to rescind the Policy" because Endurance issued the Policy in reliance on material misrepresentations that EPAI's officers made. *Id*. ¶¶ 45–50. K&S, EPAI's landlord, intervened in the action. Consent Order 2, ECF No. 1-7.

The parties filed cross-motions for summary judgment, ECF Nos. 1-68 & 1-89. K&S and Trustee Cohen argued that Endurance waived its right to rescind the Policy by "fail[ing] even now to return Plaintiff's premium payments," as well as by failing to exercise its right promptly and by taking actions through which it ratified the Policy. Defs.' Mot. for Sum. J. 7 & 10–11; Appellants' Br. 3. By affidavit attached to Endurance's motion for summary judgment, Endurance's Claims Director and Rule 30(b)(6) deponent Stephen Wunderlich stated that "Endurance is willing to refund to EPAI any premium owed under the policy, and will do so as soon as its accounting is completed." Wunderlich Aff. ¶ 39. Mr. Wunderlich later testified that the accounting was "probably complete in 2010," Apr. 22, 2011 Wunderlich Dep. 118:4–5, ECF No. 1-80, but as of August 14, 2012, when the bankruptcy court issued its Memorandum of Decision on the summary judgment motions, Endurance had neither produced the accounting nor returned any portion of EPAI's premium. Bankr. Ct. Dec. 19.

Concluding that Endurance could rescind the Policy, the bankruptcy court granted summary judgment in favor of Endurance and denied K&S and the Trustee's cross-motion for summary judgment. Bankr. Ct. Order 2. The court held that Endurance had not waived its right to rescind because it rescinded the Policy within a reasonable time. Bankr. Ct. Dec. 18. Nor had Endurance "waived its right to rescind the Policy [through] its failure to promptly return the Debtor's premium when it informed the Debtor of its intent to rescind," *id.*, because "Endurance did demonstrate an unconditional intent to rescind and an unconditional willingness to return the

5

premium to the Debtor upon completion of the accounting," *id.* at 19. When the bankruptcy court issued its Memorandum of Decision and Order on August 14, 2012, Endurance still had not sent the accounting to the Trustee or returned the net premium. *Id.* In granting summary judgment, the court ordered Endurance to return "the portion, if any, of the premium paid by EPAI that remains after deducting the attorney fees and expenses paid by [Endurance] under the Policy and the cost of the Bishop Report." Bankr. Ct. Order 2. Approximately two weeks later, Endurance provided the accounting, styled as Affidavit of Steve Wunderlich Providing Premium Accounting to Chapter 7 Trustee Merrill Cohen (the "Accounting"), accompanied by proof of Endurance's payment of attorney's fees and for the Bishop Report. Certif. of Gil M. Coogler & Accounting, ECF Nos. 1-158 & 1-159.

On appeal, K&S and the Trustee ask this Court to reverse the bankruptcy court's ruling that Endurance could rescind the Policy "when it knowingly and intentionally failed to return the premium paid for the insurance policy." Appellants' Br. 1. Endurance designated the Accounting to be an item on the record on appeal, and Appellants moved to strike it from the record. Appellants' Mot. to Strike 1–2, ECF No. 3. This Court denied Endurance's motion to supplement the record with the Accounting, denied as moot Appellants' motion to strike, and remanded the case to the bankruptcy court for "factual findings regarding the status of Appellee Endurance's compliance with the bankruptcy court order to return EPAI's remaining premium money." Mem. & Order 1, ECF No. 22.

On remand, relying on the Accounting and the documents submitted along with it, the bankruptcy court found that "EPAI paid $6,575 in total premiums for the Policy," plus "[a]dditional taxes and policy fees . . . in an amount less than $500." Bankr. Ct. Remand Mem. & Order 6. The court also found that Endurance "paid $7,908.35 of fees and expenses to the law

6

firm of Ferguson Schetelich & Ballew, P.A. for its representation of EPAI prior to rescission of the Policy" and "$10,972.50 to Bishop & Associates for the Bishop Report." *Id.* Consequently, the court concluded that "[t]he deductions the Court allowed in the Memorandum for attorney fees and expenses and for the Bishop Report exceed the premium paid for the Policy, and no refund is due pursuant to the accounting as directed by the Court." *Id.* Appellants have filed an objection to the bankruptcy court's Memorandum and Order.

## II.     STANDARD OF REVIEW

It is well established that this Court "reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo." *In re Rood*, 448 B.R. 149, 157 (D. Md. 2011); *see In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006). Thus, "[b]ecause the grant of summary judgment is a legal question, it is reviewed de novo . . . ." *In re Rood*, 448 B.R. at 157.

In adversary proceedings in bankruptcy cases, Fed. R. Civ. P. 56 governs motions for summary judgment. Fed. R. Bankr. P. 7056. Pursuant to Rule 56, summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. May 6, 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving

party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III.  DISCUSSION

#### A.  Objection to Memorandum and Order Resolving Remand

This Court first addresses Appellants' objection to the bankruptcy court's Memorandum and Order Resolving Remand. Appellants do not challenge the veracity of the expenses noted by the bankruptcy court. Rather, Appellants object to the bankruptcy court's reliance on the Accounting. Appellants' Objection 5. They argue that the Accounting, which is in the form of an affidavit from Claims Director Stephen Wunderlich, "contradict[s] [Endurance's] prior judicial admissions," specifically the April 22, 2011 deposition testimony of Wunderlich as Endurance's Rule 30(b)(6) corporate designee, which Endurance attached to its summary judgment motion, and a July 27, 2010 letter from Mr. Wunderlich to EPAI and the Trustee, which was an exhibit to the deposition transcript, ECF Nos. 24-1 & 24-2. Appellants' Objection 2–3. According to Appellants, by attaching the 30(b)(6) deposition and the July 27, 2010 letter to its summary judgment motion, "Endurance admitted that it owed a refund of the premium after Endurance completed the audit in 2010." *Id.* at 4. In Appellants' view, this is "a judicial admission that [Endurance] cannot later contradict." *Id.* Relying on *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432 (4th Cir. 1999), *Zimmerman v. Novartis Pharmaceuticals Corp.*, 287 F.R.D. 357 (D. Md. 2012), and *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970 (4th Cir. 1990),

8

Appellants insist that "a party cannot submit a new affidavit [e.g., the Accounting] . . . that contradicts previous sworn statements, such as an affidavit that contradicts that party's earlier deposition, unless it explains the contradiction or attempts to resolve a disparity." Appellants' Objection 5.

In Opposition, Endurance argues that the information that Mr. Wunderlich provided in the Accounting is supplementary, rather than contradictory, to Mr. Wunderlich's deposition testimony. Appellee's Opp'n ¶ 7. Appellee notes that Appellants "declined to take any additional discovery on remand . . . to establish any evidence to contradict the evidentiary findings regarding the cost to Endurance of the Bishop & Associates environmental report and the costs to defend EPAI in the administrative proceedings." *Id.* ¶ 3. Endurance also contends that Appellants failed to argue on appeal that Mr. Wunderlich's deposition testimony was a judicial admission. *Id.* ¶ 6. Endurance does not cite any authority in support of its arguments.

Appellants' reliance on *Hernandez*, 187 F.3d 432, *Zimmerman*, 287 F.R.D. 357, and *Rohrbough*, 916 F.2d 970, is misplaced. In *Hernandez*, 187 F.3d 432, the plaintiff sustained injury at sea when going to repair an allegedly defective winch on his ship. *Id*. at 434. In the affidavit that the plaintiff filed in opposition to the defendant's motion for summary judgment, the plaintiff stated that "the dredges crossed because 'the starboard side winch did not engage properly and therefore caused the vessel to pull to the left.'" *Id*. at 437–38 (quoting aff.). Yet, he had testified in his deposition that "the dredges tangled because he failed to steer the vessel in a straight line." *Id*. at 438. The Fourth Circuit concluded that "[t]he district court appropriately disregarded Hernandez' affidavit in considering the summary judgment motion because it contradicted his deposition testimony." *Id*. The Fourth Circuit noted: "[W]e have consistently

9

held that a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Id*.

In *Zimmerman*, 287 F.R.D. 357, the plaintiff attached an affidavit from her expert to her opposition to the defendant's motion for summary judgment and, relying on the affidavit, argued that there was a genuine dispute as to material fact. *Id*. at 362. The affidavit "flatly contradict[ed] [the expert's] earlier deposition testimony," and on that basis, this Court disregarded it as a "sham affidavit." *Id*. The Court explained:

> Under the sham affidavit doctrine, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Application of the sham affidavit rule at the summary judgment stage "*must be carefully limited to situations involving flat contradictions of material fact.*" *Mandengue v. ADT Sec. Sys., Inc.*, No. ELH–09–3103, 2012 WL 892621, at *18 (D. Md. Mar. 14, 2012).

*Id*. (emphasis added). Similarly, in *Rohrbough*, 916 F.2d at 975–76, the Fourth Circuit held that "the district court was justified in disregarding the affidavit" of one of plaintiff's experts because it "contrast[ed] starkly" with and was "in such conflict" with the expert's previous testimony, taken at a deposition, that "the affidavit should be disregarded as a sham issue of fact."

Here, the Accounting does not "flatly contradict[]" or "contrast[] starkly" with Mr. Wunderlich's prior statements. *See id.*; *Zimmerman*, 287 F.R.D. at 362. In the Accounting, Mr. Wunderlich stated that the premiums that EPAI paid for the Policy totaled $6,575, plus less than $500 in taxes and fees. Accounting ¶ 3. This accords with Mr. Wunderlich's earlier testimony that the cost of the Policy was $6,575 plus "some additional charges, taxes and so on and so forth." Wunderlich Dep. 115:3–10. Mr. Wunderlich also indicated in the Accounting that Endurance paid $7,908.53 in attorney's fees for EPAI's representation and $10,972.50 for the

10

Bishop Report.  Accounting ¶¶ 4–5.  These assertions cannot be contradictions because Mr. Wunderlich never addressed attorney's fees or the Bishop Report in his previous testimony.

Mr. Wunderlich also stated in the Accounting that Endurance did not owe EPAI a refund. Accounting ¶ 6.  It is true that Mr. Wunderlich previously testified that Endurance was "aware of the premium, [knew] what amounts each person needs to refund, and [was] in the position to do it as soon as the trustee makes a demand for the money," Wunderlich Dep. 116:18–21, ECF No. 1-127, and wrote, on behalf of Endurance, that "[a] copy of [the 2010] accounting indicating the net premium remaining will be sent under separate cover to you.  A check will then be sent to the Bankruptcy Trustee, Merrill Cohen, and if rejected, will be paid into the Court," July 27, 2010 Ltr. 6.  Thus, it appears that Endurance initially believed there would be a refund.  Yet, the Accounting was submitted "to comply with the Court's directive . . . to return . . . the portion of the premium . . . that remains, if any, *after deducting the attorney fees and expenses paid by Endurance under the Policy and the cost of the Bishop Report*."  Accounting ¶ 2 (emphasis added).  Indeed, Mr. Wunderlich makes clear that he deducted the expenses that "the Court allowed," and did so "in accordance with the Court's Decision and Order."  *Id.* ¶ 6.  Endurance may not have made these deductions previously.[3]

More significantly, because EPAI had made material misrepresentations when it entered into the insurance agreement with Endurance, Endurance had "'a right to rescind the contract

---

[3] Contrary to Appellants' assertion that the Court's directive "contravened the criteria that Endurance *admittedly used* two years earlier in its audit," Appellants' Reply Br. 2 (emphasis added), Endurance never stated what deductions it would make in its accounting.  Certainly, in his deposition, Mr. Wunderlich explained that an accounting was necessary in conjunction with returning the premium because "there are certain commissions, there are certain amounts that may or may not have to be refunded to people down the chain of underwriting."  Wunderlich Dep. 116:4–6.  A statement regarding commissions is not equivalent to a declaration that attorney's fees and other expenses that Endurance incurred would not be deducted from the premium.

*and recover [its] own expenditures.*'" *See Lazorcak v. Feuerstein*, 327 A.2d 477, 481 (Md. 1974) (quoting *Kemp v. Weber*, 24 A.2d 779, 780 (Md. 1942)) (emphasis added); *Kemp*, 24 A.2d at 780 ("[I]f [a contract is] rescinded, [the party to the contract] must return his benefits *and get back his expenditures*. … [H]e has an opportunity to disavow [the contract], *get back what he has put out*, and place himself in approximately the same position in which he would have been had no contract been made.") (emphasis added). EPAI's expenditures included attorney's fees and the Bishop Report. Therefore, those items should have been deducted from the premium in the Accounting, even if they were not deducted previously. *See Lazorcak*, 327 A.2d at 481; *Kemp*, 24 A.2d at 780. Thus, the bankruptcy court properly instructed Endurance to deduct those items from any refund due to EPAI.

Further, at the April 2, 2013 status conference before the bankruptcy court and again at the April 18, 2013 hearing before the bankruptcy court, the court afforded Appellants "the opportunity for discovery to challenge the matters in the [Accounting]," but Appellants "declined that request." Bankr. Ct. Remand Mem. & Order 3–4. Thus, Appellants' failure to challenge the veracity of the contents of the Accounting, when presented with the opportunity to do so, is an evidentiary admission that the Accounting is factually accurate. *See* Fed. R. Evid. 801(d)(2)(B); Fed. R. Evid. 801(d)(2)(B) advisory committee notes (1972) ("Under established principles an admission may be made by . . . acquiescing in the statement of another. . . . When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.").

Appellants' Objection is OVERRULED. Consequently, the relevant facts for purposes of summary judgment include that "EPAI paid $6,575 in total premiums for the Policy," plus "[a]dditional taxes and policy fees . . . in an amount less than $500," and that Endurance paid

12

$7,908.35 in attorney's fees for EPAI's representation and $10,972.50 for the Bishop Report, such that Endurance paid more on EPAI's behalf than it received from EPAI. Bankr. Ct. Remand Mem. & Order 6.

### B. Appeal of Memorandum of Decision and Order

As the bankruptcy court noted, Appellants concede that Endurance has pleaded the elements of a rescission claim sufficiently, even conceding that "material misrepresentations were made in the Application, and that Endurance relied on those representations." Bankr. Ct. Dec. 12. The issue Appellants raised below, and now raise on appeal, is whether Endurance waived its right to rescind the Policy by failing to return the premium promptly. *Id.*; Appellants' Br. 1. For the reasons explained below, this Court concludes that Endurance did not waive its right to rescind the Policy because Endurance was entitled to deduct its own expenses to achieve the *status quo ante* and, after deducting its own expenses from the payment it received from EPAI, Endurance had no portion of the premium left to refund.

On appeal, K&S and the Trustee argue that Endurance's delay in returning the premium "is untimely as a matter of Maryland law, and precludes Endurance from seeking to exercise an extraordinary rescission claim." Appellants' Br. 11. Appellants contend that if a party to a contract wants to rescind the contract, "he must promptly return the benefits, or be deemed to have ratified the contract." *Id.* at 13. Thus, in Appellants' view, "[i]t was not enough for Endurance to state that it had an 'unconditional willingness' to return the premium; it had to follow through and promptly return the premium once the accounting was completed in 2010." *Id.* Appellants rely on *Kemp v. Weber*, 24 A.2d 779 (Md. 1942), and *Finch v. Hughes Aircraft Co.*, 469 A.2d 867 (Md. Ct. Spec. App. 1984). *Id.* at 13–15. They contest the bankruptcy court's reliance on *Lazorcak v. Feuerstein*, 327 A.2d 477 (Md. 1974), insisting that "the Bankruptcy

13

Court misread *Lazorcak*," which, according to Appellants, "reaffirmed that a party seeking rescission must both promptly articulate the intent to rescind the contract and promptly return the consideration once it learns of the facts; it cannot just make an empty promise to tender back consideration and then fail to return it, as Endurance did here."   Appellants' Br. 17. Appellants contend: "Both acts had to be performed promptly, especially when the accounting was conducted in 2010.  Endurance did neither."  Appellants' Reply Br. 10.  They also argue that the fact that Endurance did not conduct an accounting until the bankruptcy court ordered it to do so "two years later—after summary judgment had been granted—proves that its 'unconditional intent' in 2010 to return the premium was merely an empty promise." *Id.*

Endurance counters that "[t]he Bankruptcy Court did not err in finding that Endurance has not waived its right to rescind the policy for failing to promptly return the Debtor's premium when it informed the Debtor of its intent to rescind." Appellee's Br. 2.  The insurer insists that it "unequivocally expressed to EPAI and the Trustee its intent to rescind the policy and restore the parties to the status quo" and "to return the premium once the accounting was complete." *Id.* According to Endurance, "the point [is] moot" because "there was no premium to return and Endurance was entitled to return the consideration." *Id.*  Endurance argues that, to rescind the Policy, it only needed to "express[] the intent and willingness to restore the parties to the status quo," *id*. at 14, because "a refund of consideration is not required in all instances in order to have a valid rescission option," *id*. at 24.   Citing *Lazorcak*, 327 A.2d at 481, and *Gaver v. Gaver*, 4 A.2d 132, 140 (1939), Endurance contends that its "delay is not untimely as a matter of law, especially in light of the exception to the general rule that the party seeking rescission must restore to the other party the consideration given where the complaining party is entitled to retain the consideration." Appellee's Br. 15–16.  In the insurer's view, "[u]nder *Lazorcak* and *Gaver*,

14

where Endurance expended funds to the benefit of EPAI by retaining counsel for it and by undertaking an independent inspection of the premises, it is legitimately entitled to retain the premiums paid and still properly seek rescission of the policy." *Id*. at 26.

A review of the relevant body of case law, relied on by the parties to reach opposing positions, is necessary. In *Kemp v. Weber*, 24 A.2d 779 (Md. 1942), the Kemps, having purchased a tract of land in 1932 and then learned a few years later that it was about 24 acres, rather than about 44 acres, as they had been told, sued the seller, seeking "the return of all payments" they made to the seller, as well as reimbursement of the money and labor they put into the land. *Id*. at 779. The court noted that, after learning that the property was only 24 acres, the Kemps "continued to live on the property," made various repairs and improvements, sold some of the acreage, built another house, and paid down the mortgage over the course of about four years. *Id*. at 780. The circuit court dismissed the lawsuit on multiple grounds including that, "after discovering the supposed deficit in acreage, the [Kemps] continued to occupy and use the land." *Id*. The appellate court held, *id.*:

> When a party to a contract is faced by some failure in carrying out its terms on the part of the other party, he has, in general, either a right to retain the contract, and collect damages for its breach, or *a right to rescind the contract and recover his own expenditures*. Obviously he cannot do both. The contract cannot be in effect, and at the same time rescinded. If in effect, he can get damages; if rescinded, he must return his benefits, and receive his expenditures. He cannot, of course, retain the benefits and get back his expenditures. He would then be receiving a free gift of whatever he got under the contract. He, therefore, has a choice.
>
> All the authorities hold that such choice must be exercised as soon as the party ascertains the facts, and is informed of the failure on the part of the other party. The reason for this is clear. Having then a knowledge of the facts, he is not deceived. If he is unwilling to take the benefits accrued or accruing under the contract, he has an opportunity to disavow it, get back what he has put out, and place himself in approximately the same position in which he would have been had no contract been made. If he does not do this, but continues receiving the benefits coming to him under the contract, he has affirmed the contract after

15

knowing the facts. He may have been deceived in the first instance, but he is not deceived after he knows. Making his choice after he knows, he must abide by it.

In *Lazorcak v. Feuerstein*, 327 A.2d 477 (Md. 1974), Lazorcak purchased Feuerstein's laundry business. *Id*. at 478. After a few months, Lazorcak learned that "the dry cleaning machine, which was included in the initial purchase and which was quite profitable, was being operated in the basement in violation of … the District of Columbia fire code." *Id*. at 479. Through counsel, Lazorcak contacted Feuerstein and proposed "'a rescission, cancellation of all indebtedness and return of funds.'" *Id*. Feuerstein did not respond, and Lazorcak continued to operate the business and make monthly payments to Feuerstein under the contract for three months. After Lazorcak missed three payments, Feuerstein filed suit, and Lazorcak filed a counterclaim for, *inter alia*, rescission. The circuit court entered judgment for Feuerstein. *Id*. at 480.

> With regard to the rescission counterclaim, the appellate court said:
>
> [A]s a general rule, the party seeking rescission must indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts. This offer of restoration or tender back must, at a minimum, demonstrate an unconditional willingness to return to the other party both the consideration that was given by that party and any benefits received under the contract. This effort to resume the status quo is required as, if a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind.

*Id*. at 481 (citations omitted). The court observed that exceptions exist to prevent the "tender back" requirement from "becom[ing] too harsh," such as when "'the complainant can properly retain [the consideration and any benefits received] irrespective of the voidable transaction.'" *Id*. at 482 (quoting *Funger v. Mayor of Somerset*, 223 A.2d 168, 174 (Md. 1966)); *see Gaver v. Gaver*, 4 A.2d 132, 140 (Md. 1939) ("It is axiomatic that one who seeks the rescission of a deed or other instrument . . . must restore the consideration paid by the defendant, except . . . where

16

for some reason the plaintiff is entitled in any event to retain the consideration, or where it is without value or is a past due debt.").

The appellate court affirmed the circuit court, concluding that none of the exceptions applied to Lazorcak, and he did not qualify for rescission because, rather than "promptly and properly manifest[ing] his determination to repudiate the contract," Lazorcak acted in a way that could "only be viewed as a reaffirmation of the contract." *Id*. at 481–82. The court reasoned that Lazorcak's letter to Feuerstein did "not amount to an unequivocal offer of restoration, as it d[id] not specify that appellant ha[d] definitely decided that he want[ed] rescission," and "perhaps of greater significance, [Lazorcak] retained ownership rather than offering to return the business to the seller when he learned of the fire code violation in July of 1972," and he made payments under the contract, operated the business, and profited from it. *Id*.

In *Finch v. Hughes Aircraft Co.*, 469 A.2d 867 (Md. Ct. Spec. App. 1984), the plaintiffs brought suit against Hughes for, *inter alia*, "rescission of . . . two [patent] contracts on the ground of fraudulent inducement." *Id*. at 871. The court said that "[a] plaintiff seeking rescission must demonstrate that he acted promptly after discovery of the ground for rescission. He must also show that he tendered to defendant all consideration and benefits received under the contract immediately after notice of the ground for rescission," or it will appear that he is validating the contract and "'he will be held to have waived his right to rescind.'" *Id*. at 894 (quoting *Lazorcak*, 327 A.2d at 481) (other citations omitted). Noting that the plaintiffs "did not move promptly to rescind the contracts after learning of the facts upon which they base their claim for rescission," and had "not returned or offered to return to Hughes any of the benefits [totaling more than $150,000] received by Plaintiffs under the License Agreement and

17

Amendment," the court entered judgment for Hughes. *Id*. at 886 & 894. The appellate court adopted the trial court's reasoning and affirmed. *Id*. at 871.

More recently, in *Benjamin v. Erk*, 771 A.2d 1106 (Md. Ct. Spec. App. 2001), the Court of Special Appeals reiterated that "'[r]escission requires at a minimum that the party exercising a right to rescind notify the other party and demonstrate an unconditional willingness to return to the other party both the consideration that was given and any benefits received.'" *Id.* at 1120 (quoting *Cutler v. Sugarman Org., Ltd.*, 596 A.2d 105, 111 (1991)); *see Brown v. NVR, Inc.*, No. PJM-10-1002, 2011 WL 2148793, at *5 (D. Md. May 31, 2011) ("Under Maryland common law, a party that seeks to rescind a contract . . . must restore the status quo either by returning or by *offering to return* whatever it has received under the contract.") (emphasis added). The *Benjamin* court observed that "'Maryland decisions which have found that there was a waiver of the right to rescind do so on the basis of an affirmative act of ratification of the contract or some other act which evidences an intent to benefit from the transaction or which renders restoring the parties to their original position impossible or difficult.'" *Id*. (quoting *Merritt v. Craig*, 746 A.2d 923 (Md. Ct. Spec. App. 2000)).

Here, Endurance showed its "unconditional willingness to return" the premium to EPAI. *See Benjamin*, 771 A.2d at 1120; *Cutler*, 596 A.2d at 111; *Lazorcak*, 327 A.2d at 481. As the bankruptcy court noted,

> In the July 27 Letter, Endurance unequivocally expressed to EPAI and the Trustee its intent to rescind the Policy and restore the parties to the status quo. It further expressed its intent to return the premium once the accounting was complete . . . . [I]n the July 27 Letter, Endurance did demonstrate an unconditional intent to rescind and an unconditional willingness to return the premium to the Debtor upon completion of the accounting. . . .

18

Bankr. Ct. Dec. 19. Moreover, Endurance exercised its right to rescind the Policy and, in accordance with the bankruptcy court's directive, attempted to recover some of its expenses by deducting them from the premium. *See Kemp*, 24 A.2d at 780. Because the expenses exceeded the premium, Endurance had nothing to return. It is true that *Finch*, 469 A.2d at 894, provides that failure to return immediately "all consideration and benefits received under the contract" is tantamount to waiver. But Endurance did, in effect, return all that it received under the Policy: Endurance received nothing under the Policy, as it spent more than it received for the premium. *See Kemp*, 24 A.2d at 780 (stating that rescinding party must "return his benefits, and receive his expenditures" to rescind the contract); *Lazorcak*, 327 A.2d at 482 (stating that the rescinding party need not return the consideration if that party is entitled to "'properly retain it irrespective of the voidable transaction'") (citation omitted); *Gaver*, 4 A.2d at 140 (stating that a party seeking to rescind a contract need not return the consideration if the party is "entitled . . . to retain the consideration").

Further, this Court has said that a party may rescind a contract "by offering to return whatever it has received under the contract." *Brown*, 2011 WL 2148793, at *5. As noted, before the bankruptcy court directed Endurance to deduct for attorney's fees and the Bishop Report and return any remaining premium, Endurance demonstrated its willingness to return what remained of the premium. Additionally, Mr. Wunderlich testified that Endurance was prepared to refund the premium "as soon as the trustee makes a demand for the money." Wunderlich Dep. 116:18–21. Appellants have not argued that they ever demanded the money. Nor have they pointed to evidence in the record that they made such a demand. Therefore, this Court concludes that Endurance did not waive its right to rescind the Policy, and the bankruptcy court properly granted summary judgment in favor of Endurance and against Appellants.

19

Case 10-00751   Doc 136   Filed 07/10/13   Page 20 of 20

Accordingly, the bankruptcy court's order granting summary judgment to Endurance will be AFFIRMED.

### IV.    CONCLUSION

In sum, Appellants' Objection to the Bankruptcy Court's April 25, 2013 Memorandum and Order Resolving Remand is OVERRULED, and the Bankruptcy Court's Memorandum of Decision and Order granting summary judgment in favor of Endurance American Specialty Insurance Co. is AFFIRMED.  The Clerk shall REOPEN this case for purposes of this ruling.  Having entered this Memorandum Opinion and the accompanying Order, the Clerk shall CLOSE this case.

A separate Order follows.

Dated: July 3, 2013                                                                    /S/
                                                                                    Paul W. Grimm
                                                                                    United States District Judge

lyb